DISTRICT COURT OF THE VIRGIN ISLANDS
                    DIVISION OF ST. THOMAS AND ST. JOHN

                                          )
UNITED STATES OF AMERICA,                 )
                                          )
            Plaintiff,                    )
                                          )   Criminal No. 2010-2
            v.                            )
                                          )
RAHEEM RAYMOND SMITH and MONIQUE M.       )
LARSEN,                                   )
                                          )
            Defendants.                   )
_____)

ATTORNEYS:

**Ishmael Meyers, Jr. AUSA**
St. Thomas, U.S.V.I.
    *For the plaintiff.*

**Treston E. Moore, Esq.**
St. Croix, U.S.V.I.
    *For Raheem Smith.*

**Anton E. Entin, Esq.**
Ft. Lauderdale, Fl.
    *For Raheem Smith.*

**Claudette V. Ferron, Esq.**
St. Thomas, U.S.V.I.
    *For Monique Larsen.*


                    MEMORANDUM OPINION

    Before the Court is the motion of the defendant, Raheem Smith ("Smith"), to suppress physical evidence.

              I. **FACTUAL AND PROCEDURAL BACKGROUND**

    The Court held a hearing on Smith's suppression motion on April 16, 2010. The government presented the testimony of U.S.

Customs and Border Protection ("CBP") officer Rafael Cruz ("Cruz").

Cruz's testimony reflected that on October 27, 2009, a package was mailed from St. Thomas to a location in Georgia. En route, the package traveled through Puerto Rico, where U.S. Postal Service ("USPS") employees transported it from the airplane on which it had arrived to a CBP station. At that CBP station, Cruz and another CBP officer inspected the package as a matter of course by putting it through an x-ray machine.

Cruz testified that there was a discrepancy between the customs declaration on the package, which stated that it contained toys, and the visual image displayed on the x-ray machine, which showed a brick of organic material. Because of that discrepancy, and without a warrant, Cruz opened the package. Inside he found some baby clothing, a birthday card, and a kilogram of cocaine.

Smith moves to suppress the cocaine, a fingerprint recovered from the birthday card, and any other evidence derived from those pieces of evidence. At the suppression hearing, the Court took the matter under advisement.

## II. DISCUSSION

The Fourth Amendment prevents "unreasonable searches and seizures." U.S. Const. Amend. IV. A seizure is usually

reasonable when it is carried out with a warrant based on probable cause. *Katz v. United States*, 389 U.S. 347, 356-357 (1967). "Warrantless searches are presumptively unreasonable." *Horton v. California,* 496 U.S. 128, 133; *see also Katz*, 389 U.S. at 357 ("Searches conducted without warrants have been held unlawful 'notwithstanding facts unquestionably showing probable cause.'" (quoting *Agnello v. United States*, 269 U.S. 20, 33 (1925)).

"The courts, however, have fashioned exceptions to the general rule which recognize that in certain limited situations the government's interest in conducting a search without a warrant outweighs the individual's privacy interest. *United States v. Hyde*, 37 F.3d 116, 118 (3d Cir. 1994) (citing *United States v. Montoya de Hernandez*, 473 U.S. at 531, 537 (1985)).

Warrantless border searches are one such exception. *California Bankers Ass'n v. Shultz*, 416 U.S. 21, 63 (1974) ("those entering and leaving the country may be examined as to their belongings and effects, all without violating the Fourth Amendment"); *see also Hyde*, 37 F.3d at 118.

> Border searches, then, from before the adoption of the Fourth Amendment, have been considered to be 'reasonable' by the single fact that the person or item in question had entered into our country from outside. There has never been any additional requirement that the reasonableness of a border search depended on the

existence of probable cause. This longstanding recognition that searches at our borders without probable cause and without a warrant are nonetheless 'reasonable' has a history as old as the Fourth Amendment itself. We reaffirm it now.

*United States v. Ramsey*, 431 U.S. 606, 619 (1977)(internal footnote omitted); *see also United States v. Glasser*, 750 F.2d 1197, 1201 (3d Cir. 1984) ("searches of personal property at the border are considered reasonable within the meaning of the Fourth Amendment simply by virtue of the fact that they occur at the border.").

Mail falls within the border search exception to the fourth amendment. *Ramsey*, 431 U.S. at 620 ("customs officials could search, without probable cause and without a warrant, envelopes carried by an entering traveler, whether in his luggage or on his person. . . . Surely no different constitutional standard should apply simply because the envelopes were mailed, not carried. The critical fact is that the envelopes cross the border and enter this country, not that they are brought in by one mode of transportation rather than another. It is their entry into this country from without it that makes a resulting search 'reasonable.'").

### III. ANALYSIS

In *United States v. Hyde*, 37 F.3d 116, the Third Circuit

confronted the scope of the border exception, as it relates to the border between the Virgin Islands and the continental United States. In that case, three travelers were subject to pat-down searches by customs officers at the St. Thomas airport, as they were headed from the Virgin Islands to Florida. The customs officers had neither obtained a warrant, nor were the searches supported by probable cause. The district court suppressed cocaine seized as a result of those searches, reasoning that there is no national border between the Virgin Islands and the continental United States, and as such, the border exception did not apply.

The Third Circuit reversed, holding that "routine customs searches of persons and their belongings without probable cause as they leave the Virgin Islands for the continental United States are not unreasonable under the Fourth Amendment." *Id.* at 117.

> As appellees stress, all of the Supreme Court's border search cases involve searches at an international boundary or its functional equivalent. This is not surprising: not only does a sovereign normally impose customs duties and attempt to exclude undesired people and goods at its international borders, but the authority of the United States to impose such duties and to exclude people and goods at places other than its international borders is also substantially restricted by the Constitution. Here we are presented with a situation somewhat different from the usual one, a situation in which the sovereign has created a border

> within its sovereign territory. As we see, however, not all territory over which a sovereign exercises sovereignty has the same legal status, and borders between "incorporated" and "unincorporated" territory of a sovereign have many of the characteristics of international borders.

*Id.* at 120. "The Virgin Islands are an unincorporated territory of the United States. . . . As an unincorporated territory, they are subject to the power of Congress under Article IV, Section 3 of the Constitution to make rules and regulations to govern the territory." *Id.* at 121 (citing *Smith v. Government of the Virgin Islands*, 375 F.2d 714 (3d Cir. 1967))(internal footnote omitted). The Virgin Islands are also outside the customs territory of the United States. *Id.* (quoting 19 U.S.C. § 1401(h)).

Congress has authorized customs inspections when travelers enter the United States from the Virgin Islands, as if they had come from a foreign country. 19 C.F.R. §122.144. People or packages arriving in Puerto Rico from outside the United States are crossing the national border. *See United States v. Linarez-Delgado*, 259 Fed. Appx. 506, 509 (3d Cir. 2007) (unpublished) ("Linarez-Delgado freely presented himself in the territory of the United States when he attempted to enter Puerto Rico and, therefore, was subject to routine border questioning.").

A person or package traveling from the Virgin Islands to Puerto Rico is subject to border inspection, as if it is entering the United States from a foreign jurisdiction. *See United States v. Pollard*, 326 F.3d 397, 402 (noting that the government maintains border checkpoints at ports of departure from St. Thomas for all people traveling to the continental United States or Puerto Rico).

In *Hyde,* the Third Circuit reasoned that in order for Congress to exercise its power to regulate commerce between the United States and the unincorporated territories, routine warrantless, border searches without probable cause are necessary. *Hyde,* 37 F.3d at 122. Likewise, the court reasoned that travelers have reduced expectations of privacy at the Virgin Islands border with the United States, similar to those of international travelers.

*Hyde*'s holding is controlling in this case. If a traveler can be searched without a warrant or probable cause when headed from the Virgin Islands to Florida, a package that has left the Virgin Islands, and entered the U.S. customs territory when it arrives in Puerto Rico, can also be searched without a warrant.[1]

---

[1] At the suppression hearing, Smith also argued that the act of the USPS employees transferring the package from an airplane to CBP for inspection constituted an unlawful seizure of that package. Officer Cruz testified that, as a matter of course, all mail – from letters to mail "flats" to packages –

The Court notes Smith's concern. Indeed, a letter mailed by a United States citizen from Puerto Rico to Georgia, through the United States Postal Service, absent some extenuating circumstance, is not subject to warrantless search because the relevant case law holds that it is traveling within the customs territory of the United States. However, the same letter, if mailed by the same person from the United States Virgin Islands to Georgia, through the United States Postal Service, may be subject to a warrantless search.

While that treatment may *seem* disparate and problematic, *Hyde* has determined that for constitutional purposes it is not.

### IV. CONCLUSION

For the reasons given above, Smith's suppression motion will be denied. An appropriate order accompanies this memorandum opinion.

 

S\_____
**CURTIS V. GÓMEZ**
**Chief Judge**

---

is transported by USPS employees in this manner. A person who deposits mail into the control of the USPS in order for the USPS to transport that mail cannot then complain that the USPS's transportation of his mail is a seizure.